**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHEREE STEELE and MOMINNA
ANSORALLI, on behalf of themselves and all
other similarly situated employees,

                Plaintiffs,

      v.

CVS PHARMACY, INC.,

                Defendant.

Civ. No.: 15-CV-04261(JGK)(KNF)

---

**DEFENDANT CVS PHARMACY INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**POLSINELLI PC**

*s/ Nancy E. Rafuse*
Nancy E. Rafuse, Esq. (admitted pro hac vice)
J. Stanton Hill, Esq. (admitted pro hac vice)
William B. Hill, Jr., Esq. (admitted pro hac vice)
Stephanie D. Delatorre, Esq. (admitted pro hac vice)
1201 West Peachtree Street, Suite 1100
Atlanta, GA 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060
nrafuse@polsinelli.com
jshill@polsinelli.com
wbhill@polsinelli.com
sdelatorre@polsinelli.com

Adam Grant, Esq.
600 Third Avenue, 42nd Floor
New York, NY 10016
Telephone:  (212) 684-0199
Facsimile:  (212) 684-0197
akgrant@polsinelli.com

Counsel for Defendant CVS Pharmacy, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ................................................................. 2

    A.    Overview of Plaintiffs Steele and Ansoralli ........................................ 2

    B.    MIs In New York City ................................................................. 4

    C.    Plaintiffs Did Not Have A Common Work Environment .................................. 6

    D.    CVS's Policies Prohibit Harassment And Require Prompt Notification ............... 9

    E.    CVS Strictly Prohibits MIs from Racially Profiling Customers And Requires MIs To Follow The "Five Steps" When Apprehending Shoplifters ................................................................. 11

    F.    Dr. Crawford's Expert Report Fails To Provide Any Meaningful Analysis Relevant To The Claims In This Action But Undermines Any Claimed Commonality ................................................................. 12

    G.    Multiple Individual Arbitrations And Other Individual Actions Make Class Certification Inappropriate And Highlight Differences Among MIs .......... 14

LEGAL ANALYSIS ................................................................. 15

    A.    Plaintiffs Fail To Satisfy Their Burden To Establish Class Certification Under Rule 23 ................................................................. 15

        i.    Plaintiffs' Class Definition Is Overbroad And Not Ascertainable ........... 16

        ii.    Plaintiffs Cannot Establish Numerosity under Rule 23(a)(1) ................. 19

        iii.    Plaintiffs Cannot Establish Commonality Under Rule 23(a) ................. 21

        iv.    Plaintiffs Cannot Establish Typicality Under Rule 23(a) ................. 28

        v.    Plaintiffs And Their Counsel Cannot Adequately Represent The Interests Of The Putative Class ................................................................. 31

    B.    Plaintiffs Cannot Meet The Requirements Of Rule 23(b)(2) After *Dukes* ........... 34

    C.    Plaintiffs Fail To Meet The Requirements Of Rule 23(b)(3) ...................... 36

        i.    Plaintiffs Cannot Show That Common Questions Predominate Over Individualized Questions ................................................................. 36

        ii.    Plaintiffs Cannot Satisfy The Superiority Requirement ...................... 39

CONCLUSION ................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 (DLI) (RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013)........................35

*Amchem Products, Inc. v. Windsor*,
521 U.S.591 (1997)................................................................................................36

*Armstrong v. Metro Transp. Auth.*,
No. 07- Civ. 3561 (DAB), 2015 WL 992737 (S.D.N.Y. Mar. 3, 2015) ................................33

*Attenborough v. Const. and Gen. Bldg. Laborers Local 79*,
238 F.R.D. 82 (S.D.N.Y. 2006) ...........................................................................31

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).....................................................................................31

*Bermudez v. TRC Holdings, Inc.*,
138 F.3d 1176 (7th Cir. 1998) ...............................................................................17

*Black v. Premier Co.*,
No. Civ. A. 01-4317, 2002 WL 32122658 (E.D. Pa. Sept. 13, 2002) ....................................18

*Bolden v. Walsh Grp.*,
688 F.3d 893 (7th Cir. 2012) .................................................................................22

*Boyd v. Interstate Brands Corp.*,
256 F.R.D. 340 (E.D.N.Y. 2009) ............................................................................22

*Brand v. Comcast Corp., Inc.*,
302 F.R.D. 201 (N.D. Ill. 2014)..............................................................................26

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015).............................................................................16, 18

*Brown v. Nucor Corp.*,
No. 04 Civ. 22005 (CWH), 2012 WL 12146620 (D.S.C. Sept. 11, 2012) ............................27

*Brown v. Yellow Transp., Inc.*,
No. 08 Civ. 5908, 2011 WL 1838741 (N.D. Ill. May 11, 2011) ...........................................27

*Cabrera v. 211 Garage Corp.*,
No. 05 CV 2272, 2008 WL 3927457 (GBD) (S.D.N.Y. Aug. 25, 2008) ...............................15

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)................................................................33, 36

*Childress v. City of Richmond*,
134 F.3d 1205 (4th Cir. 1998) ...............................................................................17

i

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ................................................................................................31

*Cokely v. N.Y. Convention Ctr. Operating Corp.*,
   No. 00 Civ. 4637 (CBM), 2004 WL 1152531 (S.D.N.Y. May 21, 2004) .........................26, 27

*Daubert v. Merrell Dow Pharms, Inc.*,
   509 U.S. 579 (1993) ................................................................................................12

*Dean v. Couglin*,
   107 F.R.D. 331 (S.D.N.Y. 1985) ..............................................................................33

*Dietrick v. Bauer*,
   192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................................34

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968)......................................................................................33

*Elkins v. American Showa, Inc.*,
   219 F.R.D. 414 (S.D. Ohio 2002) .......................................................................26, 29, 39

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)............................................................................................25, 30, 37

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
   270 F.R.D. 150 (S.D.N.Y. 2010) ..............................................................................32

*Gaston v. Sun Servs., LLC*,
   No. 3:11cv1970 (JBA), 2014 WL 1256865 (D. Conn. Mar. 26, 2014)..................................17

*Goodwin v. Conagra Poultry Co.*,
   No. 03-CV-1187, 2007 WL 1434905 (W.D. Ark. May 15, 2007) .........................................22

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)..................................................................................................23

*In re Bayou Hedge Fund Inv. Litigation*,
   248 F.R.D. 404 (S.D.N.Y. 2008) .........................................................................20, 40

*In re World Trade Ctr. Disaster Site Litig.*,
   722 F.3d 483 (2d Cir. 2013).....................................................................................15

*Kline v. Wolf*,
   702 F.2d 400 (2d Cir. 1983)......................................................................................32

*Krim v. pcOrder.com, Inc.*,
   210 F.R.D. 581 (W.D. Tex. 2002) .............................................................................34

*Kurczi v. Eli Lilly & Co.*,
   160 F.R.D. 667 (N.D.Ohio 1995) ..............................................................................34

*Lewis v. Nat'l Fin. Sys., Inc.*,
   No. 06-1308 (DRH)(ARL), 2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007).....................19, 20

ii

*Moore v. Publicis Group SA*,
  1:11-CV-1279, 2014 WL 11199094 (S.D.N.Y. May 15, 2014) .......................................21, 23

*N.J. Carpenters Health Fund v. Rali Selies, 2006-Q01 Tr.*,
  477 F. App'x 809 (2d Cir. 2012) ........................................................................................37

*Noble v. 93 University Place Corp.*,
  224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................................................21

*Oakley v. Verizon Communications, Inc.*,
  No. 09 Civ. 9175 (CM), 2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) ..................................39

*Patee v. Pac. N.W. Bell Tel.*,
  803 F.2d 476 (9th Cir. 1986) ..............................................................................................17

*Pronin v. Raffi Custom Photo Lab, Inc.*,
  383 F.Supp.2d 628 (S.D.N.Y.2005)......................................................................................18

*Pruitt v. City of Chicago, Dep't of Aviation*,
  No. 03 C 2877, 2004 WL 1146110 (N.D. Ill. May 20, 2004), *aff'd sub nom.*
  *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925 (7th Cir. 2006)..........................................24

*Radmanovich v. Combined Ins. Co. of Am.*,
  216 F.R.D. 424 (N.D. Ill. 2003) ..........................................................................................38

*Reid v. Lockhead Martin Aeronautics Co.*,
  205 F.R.D. 655 (N.D. Ga. 2001)..........................................................................................38

*Ruggles v. Wellpoint, Inc.*,
  253 F.R.D. 61 (N.D.N.Y. 2008)...........................................................................................15

*Sardina v. UPS, Inc.*,
  254 F. App'x 108 (2d Cir. 2007) ..........................................................................................24

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974).............................................................................................................33

*Selby v. Principal Mut. Life Ins. Co.*,
  197 F.R.D. 48 (S.D.N.Y. 2000) ...........................................................................................18

*Sicav v. Wang*,
  No. 12 Civ. 6682 (PAE), 2015 WL 268855 (SDNY Jan. 21, 2015)....................................15

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ...........................................................................................31

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ....................................................................................21, 28

*Talley v. ARINC, Inc.*,
  222 F.R.D. 260 (D. Md. 2004)..............................................................................................23

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008).................................................................................................15

iii

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 CV 8698 (SAS), 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) ....................................31

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................ *passim*

*Wiercinski v. Mangia 57, Inc.*,
   787 F.3d 106 (2d. Cir. 2015)...........................................................................................30

*Wilson v. Toussie*,
   No. 01-CV-4568 (DRH) (WDW), 2008 WL 905903 (E.D.N.Y. Mar. 31, 2008)..................19

*Wynn v. New York City Housing Auth.*,
   314 F.R.D. 122 (S.D.N.Y. 2016) ....................................................................................19

*Zapata v. IBP, Inc.*,
   167 F.R.D. 147 (D. Kan. 1996).......................................................................................38

**Rules**

Fed. R. Evid. 702 ...............................................................................................................12

Rule 23 ..............................................................................................................................16

Rule 23(a)................................................................................................................ *passim*

Rule 23(a)(1) ......................................................................................................................19

Rule 23(a)(2) ......................................................................................................................36

Rule 23(a)(4) ......................................................................................................................34

Rule 23(b) .............................................................................................................................1

Rule 23(b)(2)...........................................................................................................34, 35, 36

Rule 23(b)(3)............................................................................................................ *passim*

# TABLE OF EXHIBITS

Exhibit A      Declaration of Richard J. Gaites dated 1.11.17 (referenced as "Gaites Decl. II")

Exhibit B      Deposition of Sheree Steele dated 3.22.16 (referenced as "Steele Dep.")

Exhibit C      Deposition of Mominna Ansoralli dated 3.21.16 (referenced as "Ansoralli Dep.")

Exhibit D      Deposition of Abdul Saliu dated 7.12.16 (referenced as "Saliu Dep.")

Exhibit E      Deposition of Anthony Salvatore dated 7.20.16 (referenced as "Salvatore Dep.")

Exhibit F      Affidavit of Angel Quinones dated 5.24.16 (referenced as "Quinones Aff.")

Exhibit G      Affidavit of Jerry Hughes dated 5.26.16 (referenced as "Hughes Aff.")

Exhibit H      Declaration of Richard J. Gaites dated 11.28.16 (Doc. No. 176) (referenced as "Gaites Decl. I")

Exhibit I      Deposition of Azam Syed dated 7.26.16 (referenced as "Syed Dep.")

Exhibit J      Deposition of Nadia Ilyas dated 9.26.16 (referenced as "Ilyas Dep.")

Exhibit K      Deposition of David Gonzalez dated 7.21.16 (referenced as "Gonzalez Dep.")

Exhibit L      Deposition of Lacole Simpson dated 3.28.16 (referenced as "Simpson Dep.")

Exhibit M      Affidavit of Daniel Kinch dated 5.25.16 (referenced as "Kinch Aff.")

Exhibit N      Deposition of Kerth Pollock dated 3.29.16 (referenced as "Pollock Dep. I")

Exhibit O      Deposition of Delbert Sorhaindo dated 3.30.16 (referenced as "Sorhaindo Dep.")

Exhibit P      Declaration of Anthony Salvatore dated 11.29.16 (Doc No. 173) (referenced as "Salvatore Decl.")

Exhibit Q      Deposition of Andre Mantack dated 6.23.16 (referenced as "Mantack Dep.")

Exhibit R      Deposition of Kerth Pollock dated 10.18.16 (referenced as "Pollock Dep. II")

Exhibit S      Deposition of David L. Crawford, Ph.D. dated 8.30.16 (referenced as "Crawford Dep.")

Exhibit T      Declaration of Janet R. Thornton, Ph.D. dated 1.11.17 (Doc No. 193) (referenced as "Thornton Decl.")

Exhibit U      3.31.16 Hearing Transcript (referenced as "March 31, 2016 Hearing Transcript")

Exhibit V      Damages Specification dated June 29, 2016 in *Simpson v. CVS Pharmacy, Inc.*: AAA No. 01-15-0005-8800 (referenced as "Simpson Damages Specification")

Exhibit W      Damages Specification dated 4.8.16 in *Sorhaindo v. CVS Pharmacy, Inc.*: AAA No. 01-15-0005-8801 (referenced as "Sorhaindo Damages Specification")

## PRELIMINARY STATEMENT

Plaintiffs Sheree Steele[1] and Mominna Ansoralli's ("Plaintiffs") Motion for Class Certification should be denied because they do not satisfy the requirements of Rule 23(a) or Rule 23(b).  Plaintiffs' motion relies exclusively on a scattering of disjointed allegations made by a few former employees represented by the same counsel, which present widely varied accounts of alleged racial comments and bald speculation of purported instructions to engage in racial profiling.  Such disparate accounts—different alleged statements by different people who did not work together and worked at different times—do not support the existence of a class and demonstrate the highly individualized nature of the inquiries into the claims at issue.

Indeed, the two named Plaintiffs in this case worked for one Regional Loss Prevention Manager ("RLPM") in Queens at different times and in different places, while the other former employees worked for different RLPMs in CVS stores with different Store Managers ("SMs"), and had different experiences.  By Plaintiffs' own admissions, as they only worked for one RLPM, they cannot paint with a broad brush and claim that other RLPMs whom they never met, and cannot even name or describe, said or did anything that was racial or created a hostile work environment for Plaintiffs, much less for others.  In addition, while Plaintiffs worked at a handful of different store locations in Queens at different times with different people, they admit that they worked with SMs who did not engage in any misconduct, and did not say or do anything that was racial.

---

[1] Plaintiffs' counsel utilizes the name Zaire Lamarr-Arruz in Plaintiffs' Motion, but Plaintiff Sheree Steele has not filed anything with the Court seeking to change the caption of this case or evidencing a formal name change.  Therefore, CVS continues to refer to Plaintiff Steele using her name as it appears in the case caption, deposition testimony, and other case documents.

1

Plaintiffs' varied accounts do not present common questions of law or fact and only serve to underscore the highly individualized liability questions that cannot be proven or answered on a class-wide basis. Plaintiffs have not identified or otherwise established any common policy or practice at CVS that supports class certification.  There is absolutely no evidence that CVS permits racial profiling or racial harassment.  Rather, it is clear that CVS strictly prohibits racial profiling and racial harassment and provides extensive training on how to apprehend shoplifters in CVS stores properly using the "five steps."  Plaintiffs and the other former MIs on which they rely testified that they <u>never</u> racially profiled customers or stopped customers on the basis of race, and <u>they knew</u> that such was against CVS policy.  As more fully explained herein, Plaintiffs' Motion for Class Certification should be denied.[2]

## FACTUAL BACKGROUND

### A.      Overview of Plaintiffs Steele and Ansoralli

Oddly missing from Plaintiffs' motion is a discussion of Plaintiffs' employment circumstances with CVS as well as the connection between their employment and, if any, the employment of the class they seek to represent.  Plaintiffs do not discuss their employment with CVS because the facts demonstrate that they are unique from each other as well as other MIs and have no factual or legal connection to the alleged group they seek to represent (which is poorly defined).

---

[2] Although Plaintiffs' Second Amended Complaint pleads claims for retaliation, Plaintiffs do not move for certification of a class on retaliation claims and therefore have abandoned such for purposes of class certification.  (*See* Plaintiffs' Second Amended Class Action Complaint, Doc. No. 39.)

2

Plaintiff Sheree Steele worked for CVS as a Market Investigator for only 6 months, from February 18, 2013 until July 2013, when she went out on a leave of absence and did not return. (Gaites Decl. II ¶ 7; Steele Dep. at 142:2-4.)   Steele was first assigned to CVS stores as a contractor through her then employer, U.S. Security.   (*Id.* at 56:18-57:10)   She testified that she liked her work and assignments at CVS through U.S. Security and inquired how to apply for a job as a Market Investigator with CVS.   (*Id.* at 68:14-19; 109:16-112:24.)   Steele liked the SMs she worked with and she did not encounter any racial comments or statements from SMs in the stores where she was assigned.   (*Id.* at 108:8-109:15.)   Steele learned about the CVS policy against racial profiling at her new hire orientation.   (*Id.* at 302:23-303:8.)   She also testified that she never racially profiled a customer at CVS and is unaware of any MI at CVS who ever racially profiled a customer at CVS the entire time she was employed by CVS.   (*Id.* at 303:9-304:3; 307:15-308:7.)

Steele worked for RLPM Abdul Saliu during her six months of employment.   (*Id.* at 138:9-11; 142:2-9.)   She never worked for, cannot name, does not know, and never met any other RLPM.   (*Id.* at 292:9-293:12.)   As such, Steele clearly did not ever encounter any other RLPM whom she can testify ever engaged in any racial comments, statements, slurs or actions. As an MI, Steele worked undercover in certain CVS stores – primarily in Queens – and with only a few exceptions, was the only MI assigned to the store where she worked.   (*Id.* at 137:25-141:9.)   She was assigned to a home store where the SM was John Selling.   (*Id.* at 211:18-212:10.)   Steele testified that Selling was a good SM, she liked working with him, Selling never said or did anything racial, and she never had any complaint about him whatsoever.   (*Id.* at 211:18-213:24.)

Plaintiff Mominna Ansoralli worked as an MI for CVS for approximately 16 weeks, from October 8, 2012 to February 2, 2013, in stores located in Queens and Brooklyn.  (Gaites Decl. II ¶ 8; Ansoralli Dep. at 145:20-146:12, 172:14-19.)   Ansoralli did her initial training in two Queens stores.  (Ansoralli Dep.at 104:2-25; 124:2-125:13)  Saliu was her RLPM.  (*Id.* at 128:13-25; 175:16-18.)  Her only encounter with any other RLPM was with Anthony Salvatore during her interview and two brief encounters when he was physically in two stores while she was in the store.  (*Id.* at 287:17-288:22.)  Ansoralli cannot name, has not met, and does not know any other RLPM.  (*Id.* at 263:14-23.)

Ansoralli testified about her interactions with SMs in Queens and Brooklyn, admitting that she did not encounter any racially improper comments, statements or actions at the stores where she was assigned in Astoria, Glendale, Brooklyn and Manhattan.  (*Id*. at 142:8-25;146:24-147:10;155:16-156:8;162:7-18;164:17-21;164:22-165:5;172:14-173:7).  Ansoralli never worked in any store in Staten Island or the Bronx.  (*Id.* at 173:8-13).

Ansoralli admitted that, at her new hire orientation, she received training on the CVS employee handbook, the CVS code of conduct, and the CVS Market Investigator Policy, all of which included the CVS policies against discrimination and prohibiting discrimination against customers.   (*Id.* 358:14-18;  363:3-367:16;  369:2-372:12;  372:24-373:16;  377:6-382:11  & Exhibits 1, 2, 3, 4, and 5.)   Ansoralli testified that she never had a bad stop, never racially profiled a CVS customer and never heard about or saw anyone racially profile a customer at CVS.  (*Id.* at 246:12-19; 341:14-342:21.)

### B.     MIs In New York City

MIs employed in New York City work undercover to detect and prevent shoplifting in CVS stores.  (Saliu Dep. at 43:8-45:12)  MIs report directly to a Regional Loss Prevention Manager ("RLPM").  (*Id.* at 38:20-39:2; Steele Dep. at 138:9-11; Ansoralli Dep. at 128:13-25;

175:16-18.)  An RLPM works in the loss prevention department and is primarily responsible for preventing losses whether through external or internal theft by conducting baseline audits, conducting internal investigations, partnering with operational partners and other RLPMs. (Salvatore Dep.at 14:22-15:11)   In addition to the loss prevention duties for stores and pharmacies in their assigned span of control, an RLPM also supervises Market Investigators, who work in the stores located in the RLPM's span of control.  (*Id.* at 15:12-17:19; Saliu Dep. at 38:20-39:2.)  RLPMs in New York City report directly to a Senior Regional Loss Prevention Manager ("Senior RLPM").  (Salvatore Dep. at 19:11-20:18; Saliu Dep. at 20:16-24:24.)  MIs are not supervised by SMs.  Both Steele and Ansoralli testified that the RLPM supervised them and their work.  (Steele Dep. at 138:9-11; 142:2-9; Ansoralli Dep. at 175:10-18.)  They also agreed that they did not take direction from and were not supervised by the SMs.  (Steele Dep. at 292:5-8; Ansoralli Dep. 175:10-18; Affidavit of Angel Quinones ¶ 37; Affidavit of Jerry Hughes ¶ 40.)  SMs are not authorized to take employment actions effecting a significant change in the employment status of an MI, including but not limited to hiring, firing, failing to promote, reassigning with significantly different responsibilities, or causing a significant change in benefits.  (Gaites Decl. I ¶ 8; *see also* Syed Dep.at 20:11-20; Ilyas Dep. at 24:11-25:23.) An RLPM is assigned a geographic span of control.  (Saliu Dep. at 25:15-26:12; Salvatore Dep. at 21:3-9.)   The store assignments change over time, encompassing different CVS stores at different periods of time, and can be realigned to different geographic parts of New York City. (Saliu Dep. at 26:13-17; Salvatore Dep. at 21:3-24:15.)   Abdul Saliu's span of control when Plaintiff Ansoralli worked for him included stores in portions of Queens and Brooklyn.  (Saliu Dep. at 26:18-20.)  Saliu's span of control later changed to include stores located in Brooklyn. (*Id.* at 28:5-29:12.)  During this time, Plaintiff Steele worked for Saliu. (Gaites Decl. II ¶ 7.)

Saliu's responsibility has changed since Ansoralli's and Steele's termination.  (Saliu Dep. at 30:2-33:5.)

Neither named Plaintiff worked for Anthony Salvatore.  Plaintiff Ansoralli met Salvatore in her job interview, and Salvatore extended her the offer of employment.  (Ansoralli Dep. at 98:17-99-7.)  At the time of Ansoralli's interview, Salvatore's span of control included stores in downtown Manhattan and Staten Island.  (Salvatore Dep. at 23:9-11.)  At the end of 2012, Salvatore's span of control changed to stores in a portion of Queens, and downtown Manhattan and Staten Island.  (*Id.* at 23:3-11.)  In February/March 2014, Salvatore no longer had responsibility for stores on Staten Island and included stores located in uptown Manhattan.  (*Id.* at 23:11-15.)  Salvatore's span of control has changed since Ansoralli's and Steele's respective termination.  (*Id.* at 23:11-24:3.)

As discussed, the RLPMs and MIs work in the loss prevention department.  (Gaites Decl. II ¶ 5.)  The SMs and other store employees (e.g., cashiers, pharmacy employees, etc.), work in store operations.  (*Id.*)  There are currently approximately 143 different CVS stores located within the New York City area.  (*Id.* ¶ 6.)  There have been approximately 300 different people in the position of SM in CVS stores in New York City during the relevant time period.

### C.    Plaintiffs Did Not Have A Common Work Environment

MIs employed in New York City reported to different RLPMs across different time periods.  Plaintiff Steele only reported to RLPM Saliu and testified that she did not work with or even ever meet any of the other RLPMs in New York City during her employment at CVS.  (Steele Dep. at 138:9-11; 142:2-9; 292:9-293:12.)  Plaintiff Ansoralli met RLPM Salvatore during her job interview, but only ever worked for RLPM Saliu.  (Ansoralli Dep. at 128:13-25; 175:16-18; 287:17-288:22.) Testimony from other MIs shows that they worked for different

RLPMs and had different experiences.  Plaintiffs' witness, David Gonzalez, worked for RLPMs, Ron Taylor, Frank Moreno and Anthony Salvatore, and testified that he never experienced any racial conduct or heard any racial statements or slurs from Taylor, Moreno or Salvatore. (Gonzalez Dep. at 73:24-74:22; 76:14-21; 84:14-85:8; 87:20-89:14)  Plaintiffs' witness, Lacole Simpson, worked for Salvatore, Clint Meritte, and Eric Butler.  (Simpson Dep. at 57:12-58:5; 100:20-23; 115:4-11).  Simpson testified that she enjoyed working with Meritte and Butler, so much so that she considered Meritte a father figure.  (*Id.* at 59:4-19; 101:15-24.)  Simpson testified that she never encountered any racial comments, statement, slurs or conduct from Meritte, Butler or Moreno. (*Id.* at 59:4-19; 101:15-24; 115:4-11.)  Other MIs have testified that they never encountered any racial comments, statements, slurs or conduct from Salvatore, Saliu or any other RLPM with whom they have worked.  (Kinch Aff.  ¶¶ 7-8; 19-23 (Salvatore never said or did anything racial or offensive); Hughes Aff. at ¶¶ 7-9; 23-28 (Salvatore, Saliu and Burgess never said or did anything racial or offensive); Quinones Aff. at ¶¶ 7-9; 25-31 (Salvatore, Saliu and Butler never said or did anything racial or offensive).  Plaintiffs and their witnesses testified that the Senior RLPMs never engaged in any offensive racial conduct or statements, and never engaged in any racial profiling.  (Steele Dep. at 292:19; 293:7; Ansoralli epo. at 261:17-262:20; Simpson Dep. at 150:2-155:21; Pollock Dep. I at 229:3-13; Sorhaindo Dep. at 188:2-5.)

MIs are assigned to work in different CVS stores.  MIs rotate between CVS stores within an assigned geographic area.  (Steele Dep. at 215:8-24; 228:20-229:8; Simpson Dep. at 61:4-14; Pollock Dep. I at 51:19-52:6; Gonzalez Dep. at 200:21-202:9; Ansoralli Dep. at 64:20-65:10; 73:3-17; 244:4-22.)  Ansoralli testified that she almost always worked alone, not with other MIs

and, since her job was to work undercover, she rarely interacted with store employees.  (*Id.* at 65:3-10; 90:10-21; 184:15-19.)

Other MIs also worked in CVS stores where no racial statements or directives to racially profile were ever made.  (*See e.g.*, Steele Dep. at 211:18-213:24; 262:22-263:14; 265:9-19; Simpson Dep. at 299:9-12; Pollock Dep. I at 103:10-21; Gonzalez Dep. at 106:21-108:5.) Gonzalez testified that he was never instructed to racially profile or subjected to any racially offensive statements in the Allerton and Riverdale CVS stores, located in the Bronx.  (Gonzalez Dep. at 106:21-108:5.) Sorhaindo testified that he never encountered anything he considered offensive at CVS stores he worked in during CVS market blitzes in the Bronx and in Brooklyn. (Sorhaindo Dep. at 228:5-10.)  Pollock testified that SM Myong Moon never said anything he considered racist in his presence while he worked in his stores.  (Pollock Dep. I at 158:22-159:12.)  Jerry Hughes has worked as an MI and Lead MI since 2005 and testified that no CVS SM has said or done anything racial or offensive in any of the CVS stores where he has worked. (Hughes Aff. at ¶¶ 4; 31-39.)  Daniel Kinch and Angel Quinones, both of whom have worked as MIs in Manhattan since 2013, testified that no SM has said or done anything racial or offensive in any of the CVS stores where they worked.  (Kinch Aff. at ¶¶ 5; 27-35; Quinones Aff. at ¶¶ 4; 39-45.)

Out of the over 300 people who held the position of SM in New York City, Plaintiff Ansoralli  claims that five SMs ever said anything she alleges was inappropriate, three of whom she could not name or identify.  (Ansoralli Dep. at 131:5-11; 144:2-21; 147:21-148:12; 158:12-159:6; 165:13-166:23; *see also* Plaintiffs' Memo at 3-4.)  Plaintiff Steele identified two SMs by name who allegedly ever said anything she alleges was inappropriate.  (Steele Dep. at 215:2-3;

244:7-16; 251:3-23.)[3]   Moreover, Plaintiffs' blanket contention that particular inappropriate comments "were made in front of many members of the Proposed Class" and/or "in front of many other employees" (*See e.g.*, Plaintiffs' Memo at 1-3; 5; 7-18) is unsupported by the record. Steele testified that no one was present for any of the alleged comments she claims were made by Saliu with the exception of one individual one time.  (Steele Dep. at 280:3-282:10.)   In addition, Steele testified that no one was present for any of the alleged comments she claims were made by the SMs, that no one was even standing nearby and that the conversations were just Steele and the SM "every time."  (*Id.* at 255:5-257:24.)  Ansoralli testified that the alleged comments by Saliu were always one-on-one conversations. (Ansoralli Dep. 183:22-184:24; 132:5-11; 145:7-19; 160:7-14.)

### D.    CVS's Policies Prohibit Harassment And Require Prompt Notification

CVS's Code of Conduct and Employee Handbook strictly prohibit harassment of employees and customers.  (Ansoralli Dep. at 369:2-372:12 and Exhibits 3 & 4; Salvatore Decl. ¶ 4 & Exhibits 1 & 2.)  CVS employees who believe they have experienced or witnessed unlawful discrimination or harassment are required to promptly notify CVS and CVS provides different avenues for employees to make complaints of unlawful discrimination and/or harassment.  (Ansoralli Dep. at 371:18-372:12; 372:24-373:16; 374:22-375:16; Steele Dep. at 193:3-8; Salvatore Decl. at Exhibit 1.)  CVS's Employee Handbook provides in relevant part:

> Employees who believe they have witnessed or have been subjected to unlawful discrimination, workplace violence or harassment, regardless of whether the offensive act was committed by a supervisor, coworker, vendor, visitor or customer, **should promptly notify their supervisor or their Human Resources Manager.  If the employee's supervisor is involved in the incident, the**

---

[3] Some of the alleged comments in Plaintiffs' brief are attributed to fictitious individuals (identified as "Doe").

**employee should report the incident to their Human Resources Manager or to the Employee Relations Department at the Customer Support Center. Employees may call the CVS Caremark Ethics Line at any time to report any incidents of unlawful discrimination, workplace violence or harassment.** Please refer to the Resource Guide for contact numbers.

(Salvatore Decl. at Exhibit 1.) (emphasis added.)  CVS also strictly prohibits retaliation against employees who lodge bona fide complaints of unlawful discrimination and/or harassment.  (*Id.*) The Employee Handbook provides employees with phone numbers for both the Employee Relations Department and the Ethics Line.  (*Id.*)  The policies and methods for complaining are available to employees at new hire orientation, in the handbook and in the employee break room. (Steele Dep. at 193:3-8; 298:20-299:4; Ansoralli Dep. at 363:3-367:16; 376:2-23 & Exhibits 1, 2, & 3.)

Both Steele and Ansoralli received new hire orientation and acknowledged receipt of the handbook and policies.  Ansoralli testified that during her new hire orientation, she received and reviewed the employee handbook, the code of conduct and harassment policy.  (Ansoralli Dep. 358:14-18; 363:3-367:16 & Exhibits 1, 2, & 3.)  Ansoralli also testified that she reviewed the Loss Prevention Policy and Procedures, as well as the MI training, which contained multiple references to the CVS policy against racial discrimination and against racial profiling.  (*Id.* at 377:6-382:11 & Exhibit 5.)  Steele testified that she also went through new hire orientation, at which she learned about the CVS policy against profiling.  (Steele Dep. at 302:23-303:22.)

Neither Plaintiff ever made any complaints to CVS regarding racial discrimination, hostile work environment, racially offensive comments or directives to engage in racial profiling of CVS customers.  (Ansoralli Dep. at 134:18-21; 145:17-19; 376:2-377:5; Steele Dep. at 245:6-8; 253:24-254:2; 245:9-246:13; Gaites Decl. I ¶¶ 15-16.)

10

**E.      CVS Strictly Prohibits MIs from Racially Profiling Customers And Requires MIs To Follow The "Five Steps" When Apprehending Shoplifters**

CVS strictly prohibits MIs from racially profiling customers and requires MIs to follow the "Five Steps" when apprehending shoplifters in CVS stores.  CVS's Market Investigator Training Learner's Guide specifically states:

> According to policy, a Market Investigator should monitor customers based on actions and behaviors and **MUST NOT** monitor activity based on **race**, age, sex, etc.  **Profiling and stereotyping is strictly prohibited.**

(Ansoralli Dep. at 377:6-382:11 & Exhibit 5; Gaites Decl. I ¶ 6 & Exhibit 1) (providing that surveillance and observation "must be based on the actions and behaviors of the individual and not on the individual characteristics such as age, gender, race, sexual orientation, disability, national origin, religion or any other protected status.") (emphasis added.)  CVS MIs are trained and instructed that they must follow the "five steps" to detect and apprehend shoplifters.  (Gaites Decl. I ¶ 6; Mantack Dep. at 66:20-24; 110:6-12; 164:12-165:8, Gonzalez Dep. at 45:19-46:6; 99:15-100:4; 112:4-15; 182:7-23; Sorhaindo Dep. at 239:23-240:5; Pollock Dep. I at 116:2-117:12; Simpson Dep. at 91:3-22; Ansoralli Dep. at 245:16-246:16.)  The decision to stop a customer is based on the "five steps" and an MI must complete and observe all five steps before approaching and detaining a suspected shoplifter.  (Steele Dep. at 43:6-9; 234:5-21.)  The "five steps" are also included in CVS's Market Investigator Training Learner's Guide.  (Gaites Decl. I ¶ 6.)

Both Plaintiffs testified that they always followed the five steps and never had a "bad stop."  (Steele Dep. 46:6-9; 234:5-21; Ansoralli Dep. at 246:17-19; 307:23-308:11; 337:14-17.)  Every MI testified that they knew it was against CVS policy to racially profile customers and affirmatively testified that they never racially profiled customers during their employment.  (Steele Dep. at 303:9-304:3; 307:15-308:7; Ansoralli Dep. at 246:12-19; Simpson Dep. at

11

299:13-301:6; Sorhaindo Dep. at 330:3-20; Pollock Dep. I at 74:3-13; 116:2-117:12; Mantack Dep. at 163:10-164:11.)  MIs also testified that they always followed the "Five Steps" when apprehending a customer and never made a bad stop.  (Simpson Dep. at 91:3-22; 299:13-300:24; Pollock Dep. II at 106:4-107:4; 115:13-15; Pollock Dep. I at 82:15-84:23; 116:20-117:12; 253:3-14; Sorhaindo Dep. at 40:23-25.)

### F. Dr. Crawford's Expert Report Fails To Provide Any Meaningful Analysis Relevant To The Claims In This Action But Undermines Any Claimed Commonality

Dr. David Crawford's report is not relevant to the claims in this action and should be excluded under the standards established in *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993).  CVS has concurrently filed a Motion to Exclude Dr. David Crawford, which provides detailed reasons for the exclusion of Dr. Crawford's expert report given its failure to meet the basic guidelines and requirements of Fed. R. Evid. 702.

Dr. Crawford conducted an analysis of the decision by CVS personnel to call the police after a shoplifter had been apprehended for what he refers to as "race neutrality."  This analysis is entirely irrelevant to the claims at issue, *i.e.*, whether Plaintiffs were allegedly subjected to a racially hostile work environment.  In fact, Dr. Crawford testified at his deposition that he discussed with Plaintiffs' counsel the allegations in the case, and he "was informed that there was a hostile work environment claim but we didn't really discuss that much because I wasn't going to be addressing that."[4] (Crawford Dep. at 54:4-20; 184:5-185:12 (analyses do not provide

---

[4] Plaintiffs' statement in their brief at p. 29 that "Dr. Crawford's report provides substantial evidence that racism permeates decision-making across NYC" is a falsehood with which even Dr. Crawford disagrees.  Specifically, when asked if it was his opinion that race discrimination

any evidence of whether Steele or any individual was subjected to hostile work environment; analyses do not inform whether CVS racially profiles customers.)

Moreover, Dr. Crawford's testimony does not support, and actually undermines, Plaintiffs' present assertion that a common work environment exists. Dr. Crawford testified in his deposition that his analyses demonstrate differences by store. (*Id.* 149:18-150:2.) While he did not include this information in his report, Dr. Crawford acknowledged during his deposition that his data and results demonstrate "substantial variation" by store. (*Id.* 150:3-151:8.) When asked why he did not include this information in his report, Dr. Crawford testified that he was not at all concerned with whether or not the results were true across all stores, as opposed to within some but not all: "I did not test whether it's true across – in every single store in every year." (*Id.* at 155:6-25; *see also id.* at 157:3-17 "**I can't say where it's happening**.")

In addition, Dr. Crawford only analyzed police notification controlling for store and year. He did not actually analyze the decision to notify the police by including the factors that go into that decision. (*Id.* 101:19-102:23; 106:3-5.) He did, however, acknowledge that many factors were involved in the decision, such as whether the suspect was a juvenile (which requires that the police be notified), whether a weapon was involved (which he acknowledges is a good reason to call the police) or when Organized Retail Crime units may be suspected of involvement. (*Id.* 106:12-107:18; 140:2-142:14). CVS's expert, Dr. Janet Thornton, did control for these missing factors, using the analyses Dr. Crawford testified would be appropriate, but that he did not conduct. (*Id.* 104:12-105:12). When properly analyzed to consider the factors that go into the

---

was occurring in this case, Dr. Crawford testified: "**No. I'm not – I'm not saying anything about race discrimination.**" (Crawford Dep. at 157:19-24.)

decision of personnel to notify the police, there are no statistically significant differences in the odds of police notification by race. (Thornton Decl. ¶¶ 34-35; 39; 41-43).

### G. Multiple Individual Arbitrations And Other Individual Actions Make Class Certification Inappropriate And Highlight Differences Among MIs

In addition to this instant action, Plaintiffs' counsel represents the 14 former MIs who have provided testimony via affidavit in this case in support of Plaintiff's motion. Each has filed separate individual actions against CVS in different forums, with separate legal claims against different defendants. Five MIs have filed individual actions in New York Supreme Court. These five MIs filed state law claims against CVS and different individual defendants pertinent to their individual claims for hostile work environment. (*See Mantack v. CVS Pharmacy, Inc., et. al*, New York State Supreme Court, Bronx County, Index No. 26495/201SE; *Fuentes v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Richmond County, Index No. 151439/2016; *Barrett v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Richmond County, Index No. 519262/2016; S*alazar v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Bronx County, Index No. 27410/2016; and *Gonzalez v. CVS Pharmacy, Inc., et. al*, New York State Supreme Court Bronx County, Index No. 22102/2016E.) Three MIs have a pending motion to compel arbitration because they agreed to CVS's Arbitration Policy. (*See Leach v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Kings County, Index No. 519263/2016; *Alfonso v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Bronx County, Index No. 27409/2016; and *Rajan v. CVS Pharmacy, Inc., et al,* New York State Supreme Court, Richmond County, Index No. 151440/2016.)

Two MIs filed individual actions in federal court asserting both federal and state law claims against CVS and other individual defendants. (*See Thomas v. CVS Pharmacy, Inc., et. al*, USDC Eastern District of New York, Case No. 1:16-CV-01505; *Mena v. CVS Pharmacy,*

14

*Inc., et al,* USDC Eastern District of New York, Case No. 16-CV-06032.)   Three MIs have already been compelled to arbitrate their claims after filing individual actions in federal court and another MI consented to arbitration because the MI was also subject to CVS's Arbitration Policy.   (*See* Orders Compelling Arbitration, in *Pollack v. CVS Pharmacy, Inc.* Case No. 1:15-cv-06227, Doc. No. 29;  *Sorhaindo v. CVS Pharmacy, Inc.,* Case No. 1:15-cv-06230, Doc. No. 29, and *Simpson v . CVS Pharmacy, Inc.* Case No. 1:15-CV-0631, Doc. No. 30; *Eleston v. CVS Pharmacy, Inc.* New York State Supreme Court, Bronx County, Index No. 22101/2016E.)

## LEGAL ANALYSIS

### A.   Plaintiffs Fail To Satisfy Their Burden To Establish Class Certification Under Rule 23

Before a court may certify a class action, "Rule 23 subjects a complaint to a 'rigorous analysis.'"   *Ruggles v. Wellpoint, Inc.,* 253 F.R.D. 61, 66 (N.D.N.Y. 2008).   "It is well-established in this Circuit that plaintiffs alleging class certification must go beyond the allegations embodied in the pleadings and provide the court with evidence of *specific facts* justifying certification."   *Cabrera v. 211 Garage Corp.,* No. 05 CV 2272, 2008 WL 3927457 (GBD), at *2 (S.D.N.Y. Aug. 25, 2008).   Plaintiffs bear the burden of proving by a preponderance of the evidence, that all of the requirements for a class action under Rule 23 have been satisfied through admissible evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *see also Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2015 WL 268855, at *6 (SDNY Jan. 21, 2015) ("the court must ensure that there is a basis in admissible evidence for each factual representation made in support of class certification.")   As such, the court here cannot consider the multiple unverified interrogatory responses (by way of example) submitted by Plaintiffs with their brief.   *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (affirming rejection of interrogatory

answers not made under penalty of perjury).  As discussed below, Plaintiffs cannot meet any of the requirements of Rule 23(a) or 23(b) and therefore class certification must be denied.

### i.   Plaintiffs' Class Definition Is Overbroad And Not Ascertainable

Plaintiffs seek to certify a class that is overbroad and unascertainable.  The Second Circuit "[has] recognized an 'implied requirement of ascertainability in Rule 23 of the Federal Rules of Civil Procedure." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). "The touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*  The Second Circuit recently defined ascertainability stating that "[a] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of the case."  *Id.* at 24-25.  A class is not ascertainable where "it has no limitation on time or context" and where "the use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class."  *Id.* at 25.

Plaintiffs' class definition is overbroad and unascertainable and raises more questions than it answers.  To begin, while Plaintiffs' causes of action in the Second Amended Complaint all refer to actions that occurred because of "race and/or color," (*See* Doc. No. 39 at ¶¶ 112; 116; 119), Plaintiffs' class definition does not make any mention of race/color.  Meanwhile, Dr. Crawford, Plaintiffs' expert, testified at his deposition that he only analyzed a subset of the data provided to him in this case (*i.e.*, excluded about 29% of the available race data) because he understood the complaint to be only about African-Americans and Hispanics vis-à-vis Caucasians.  (Crawford Dep. 120:18-121:19; 125:24-126:11.)

Notably, Plaintiff Steele self identifies as African-American and claims that the events that occurred were because of her race – African-American. (Steele Dep. at 11:8-16; 284:9-17.)

16

However, Plaintiff Ansoralli, self identifies as Guyanese and Portuguese, which is her national origin, not race, and as such does not have any race claims (and cannot pursue a Section 1981 claim).  *See, e.g, Gaston v. Sun Servs., LLC*, No. 3:11cv1970 (JBA), 2014 WL 1256865, at *12 (D. Conn. Mar. 26, 2014) ("[I]t is 'axiomatic' that in order to establish a race-based hostile work environment [under Section 1981]…, a plaintiff must demonstrate that the conduct occurred because of his or her race.") (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  Ansoralli expressly disclaims that she is Hispanic – "I never identify myself as Hispanic." (Ansoralli Dep. at 169:22-25.)  Plaintiffs' witness, CVS MI Jobin Rajan, self-identifies as Indian, but relies solely upon comments concerning African-Americans, which are not based on or because of his race.  (*See* Exhibit ZZZ to Plaintiff's Memo at ¶¶ 8-12; 13-25, Doc No. 180-77.)

Plaintiffs' class definition is also fatally flawed for not being limited to persons who have standing to assert a hostile work environment claim based upon statements concerning African-Americans and Hispanics.  Individuals outside a particular race do not have standing to assert hostile work environment claims that are based on that race – i.e. a white MI has no viable hostile work environment claim based upon statements about African-Americans.  *See, e.g., Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1180 (7th Cir. 1998) (white employee lacked prudential standing under Title VII to allege injury to black applicants from race discrimination); *Childress v. City of Richmond,* 134 F.3d 1205, 1209 (4th Cir. 1998) (Luttig, J., concurring) (white male plaintiffs lacked standing to allege discrimination against women and minorities on basis of gender and race); *Patee v. Pac. N.W. Bell Tel.,* 803 F.2d 476, 478 (9th Cir. 1986) (male plaintiff lacked standing to assert rights of female co-workers discriminated against based on gender).  Further, being of the same race as a Plaintiff is not enough to be included in a class, as employees may not pursue hostile work environment claims based solely on allegations or

17

experiences of harassment against others.  *See, e.g.*, *Pronin v. Raffi Custom Photo Lab, Inc.,* 383 F.Supp.2d 628, 635 (S.D.N.Y.2005) (holding that merely witnessing the harassment of another employee does not, without more, affect "the terms and conditions of [plaintiff's] employment").

Next, Plaintiffs' definition fails to include any definite time period.  *Brecher*, 806 F.3d at 25 (emphasizing that a class is not ascertainable where "it has no limitation on time"); *see also Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 56 (S.D.N.Y. 2000) (requiring "the class definition must refer to a specific and bounded time frame in order to be workable").  The named Plaintiffs Steele and Ansoralli have not worked for CVS since 2013, and worked for CVS only for six and three months, respectively. (*See* Factual Background, Section A, *supra*.)

Plaintiffs' definition purports to include all "Store Detectives and/or employees with job duties similar to those of an MI and/or Store Detective, who have worked and/or are working in New York City and/or under the same Regional Loss Prevention Managers as New York City MIs," which cannot be ascertained.  The Court cannot easily and objectively ascertain whether any CVS employees have "job duties similar to those of an MI."  Such an analysis would require mini-trials and independent analysis as to whether individuals are currently performing or have ever performed the same or similar job functions as an MI at CVS, which does not meet the Second Circuit's ascertainability requirements.  *See, e.g., Brecher*, 806 F.3d at 24-25 ("[A] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of the case"); *Black v. Premier Co.*, No. Civ. A. 01-4317, 2002 WL 32122658, at *6 (E.D. Pa. Sept. 13, 2002) (no ascertainability in Title VII action "because it would be impossible to definitively identify class members prior to individualized fact-finding and litigation").

Plaintiffs' definition also purports to include MIs who have agreed to submit their claims to binding arbitration pursuant to CVS's Arbitration Policy.  Plaintiffs' class definition cannot include MIs with binding arbitration agreements, which include class action waivers.  This Court has already upheld that very policy and class action waiver, and compelled three such results. (*See* Orders Compelling Arbitration, Case No. 1:15-cv-06227, Doc. No. 29, Case No. 1:15-cv-06230, Doc. No. 29, *and* Case No. 1:15-CV-0631, Doc. No. 30.)  To the extent Plaintiffs request that the Court "carve out a narrower class from an overbroad class," it would not be appropriate for the Court to redefine the Plaintiffs' class definition in this instance.  *See, e.g.*, *Wilson v. Toussie*, No. 01-CV-4568 (DRH) (WDW), 2008 WL 905903, *5 (E.D.N.Y. Mar. 31, 2008) (stating that "whatever authority [the Court] might have [ ] to undertake [the task of fashioning a class], [it does] not think it appropriate to provide legal advice to experienced class action litigators") (citing *In re IPO*, 483 F.3d 70, 73 (2d Cir. 2007); *Wynn v. New York City Housing Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016) ("it would be particularly inappropriate for Court to craft the specific class definition … where – as here – plaintiffs have failed to do so themselves.").  For these reasons, Plaintiffs' class definition cannot support class certification and the Court should deny Plaintiffs' Motion for Class Certification.

### ii.    Plaintiffs Cannot Establish Numerosity under Rule 23(a)(1)

The class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Where the 'plaintiff's assertion of numerosity is based on pure speculation or bare allegations, the motion for class certification fails."  *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06-1308 (DRH)(ARL), 2007 WL 2455130, at *8 (E.D.N.Y. Aug. 23, 2007).

To begin, Plaintiffs' counsel's actions – by filing individual actions on behalf of the 14 MIs they have identified with individual claims – belies any notion that joinder or pursuit of these claims in individual actions is impracticable.  These individuals, in fact, by filing their own

19

actions, have decided that they are not members of the alleged class. Plaintiffs have submitted only pure speculation and bare allegations in support of the idea that anyone else exists or that numerosity has been established in this case. Plaintiffs cite to the interrogatory responses of RLPMs Anthony Salvatore and Abdul Saliu from another case. (*See* Exhibit XX at Interrogatory No. 6, Doc. No. 180-50 and Exhibit YY at Interrogatory No. 6, Doc No. 180-51.) In the responses, Salvatore and Abdul state that they "recall[ ] supervising the following MIs during [their] employment at CVS" and proceed to list several names that contain no context with respect to when they allegedly supervised these individuals, the race of these individuals, and/or state whether these individuals have agreed to arbitrate their claims under CVS's Arbitration Policy. A list of MIs who Saliu and Salvatore recall supervising is insufficient to satisfy the Rule 23(a) numerosity requirements. *Lewis*, 2007 WL 2455130 at *8 (striking down class certification because plaintiffs could not satisfy the numerosity requirement since plaintiffs had only provided speculative information concerning the number of individuals in the class).

The only other "evidence" submitted by Plaintiffs in support of numerosity is likewise deficient. Plaintiffs cite to the list of external case theft incident reports, claiming that it contains the names of 134 MIs who allegedly filed an external case theft incident report during "the statutory period." (*See* Plaintiffs' Memo at 24.) However, the list of external case theft incident reports does not provide the race of the individual MIs who filed the reports or otherwise provide any information as to whether these individuals have binding arbitration agreements with CVS; again failing to advise the Court as to who is in the class and how many. *See In re Bayou Hedge Fund Inv. Litigation*, 248 F.R.D. 404, 405 (S.D.N.Y. 2008) (denying class certification because the plaintiffs could not provide sufficient evidence to satisfy their burden on numerosity due to evidence that members of the purported class had filed individual arbitrations.) Consequently,

Plaintiffs have not met their burden of establishing numerosity in this case and the Court should deny class certification.[5]

### iii.    Plaintiffs Cannot Establish Commonality Under Rule 23(a)

To satisfy the commonality requirement under Rule 23(a), plaintiffs must prove that there are common issues of law or fact that affect all putative class members. *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003).  Commonality "does not mean merely that [all class members] have suffered a violation of the same provision of the law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In their brief, Plaintiffs advise the Court that they seek to do that which the *Dukes* Court expressly stated cannot be done: Plaintiffs state that "the common contention" is "the MI team in NYC is forced to work in a racially hostile work environment."  (*See* Plaintiffs' Memo at 25.)  This statement violates the "suffered a violation of the same provision of law" prohibition of the *Dukes* decision.  *See also Moore v. Publicis Group SA*, 1:11-CV-1279 (ALC)(AJP), 2014 WL 11199094, at *7 (S.D.N.Y. May 15, 2014) (denying class certification on commonality grounds relying on *Dukes* noting that "[i]n other words, the possibility that the same law was violated a variety of different ways does not lead to the 'common answers' that make [this] class litigation productive endeavor").

---

[5] Plaintiffs' contention that CVS has waived any argument on numerosity is unsupported by the record because the Court explicitly denied Plaintiffs' discovery request referenced in their brief. (*See* March 31, 2016 Hearing Transcript at 4-5)  Magistrate Judge Fox noted that he was persuaded by CVS's arguments that the particular request was a fishing expedition for Plaintiffs' counsel to seek additional clients.  (*Id.* at 4.)

Plaintiffs' argument for commonality is easily deconstructed and provides the Court with the reasons for denying class certification. Specifically, Plaintiffs only identify one "common contention." (*See* Plaintiffs' Memo at 25.) They then immediately advise the Court that "classwide resolution" of this one common contention will require "the testimony of the NYC MIs concerning the racially hostile environment they were forced to endure." (*Id.*) This statement, while telling, is the antithesis of the class action device. Plaintiffs have admitted that the only method for resolving their claims is to have all of the individual NYC MIs testify about each of their individual circumstances. Plaintiffs intend to rely on anecdotal oral evidence, or put differently, have individuals come forward, and testify to their individual claims. As set forth above, Plaintiffs and others, present vastly different accounts of the alleged conduct or statements that they claim constitute a hostile work environment, identifying different individuals in different CVS stores at different times, which cannot satisfy the requirements of commonality under Rule 23(a). (*See* Factual Background, Section C, *supra*.) *See Bolden v. Walsh Grp.*, 688 F.3d 893, 898-899 (7th Cir. 2012) (denying class certification in a racially hostile work environment case because "the 12 plaintiffs did not experience the working conditions at all 262 sites either individually or collectively, and a given plaintiff's bad experience with one of the five supervisors we have named does not present any question about the conduct of [defendant's] many other superintendents and foreman"), *Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 364-366 (E.D.N.Y. 2009) (holding that "plaintiffs' anecdotes of racial harassment limited as to time and place and do not establish a class-wide impact sufficient to satisfy Rule 23's commonality element"); *Goodwin v. Conagra Poultry Co.*, No. 03-CV-1187, 2007 WL 1434905, at *13 (W.D. Ark. May 15, 2007) (holding that the plaintiffs failed to bridge the gap between their individualized hostile work environment claims and common questions of

law because "each plaintiff presented a vastly different account of the harassing conduct that constituted the alleged hostile work environment. Each allegation differed greatly as to the frequency, severity and the nature of the conduct depending on the area they worked …, the department they worked …, and who their supervisors were … [and] these claims cannot be proven on a class-wide basis."); *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 266-268 (D. Md. 2004) (refusing to certify disparate treatment discrimination class because plaintiffs could not show commonality based on their individualized experiences).

In addition, the Supreme Court has made clear that "[w]hat matters to class certification is not common 'questions'" – which Plaintiffs here only sparingly address – "but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Plaintiffs here do not address how the case can possibly result in common answers – as it cannot. "Dissimilarities with the proposed class are what have the potential to impede the generation of common answers." *Id.* Where, as here, individualized evidence is necessary to determine certain threshold issues, the action is not appropriately determined on a class wide basis. *See Moore*, 2014 WL 11199094 at *7.

The court cannot determine Plaintiffs' alleged "common contention" with a common answer inasmuch as the elements of the alleged  hostile work environment claims here require a person-by-person inquiry into whether the alleged behavior toward each person was "sufficiently severe or pervasive to alter the conditions of [each MIs'] employment and created an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted) (internal citations and quotation marks omitted). This in turn requires a subjective and highly individualized consideration of the facts and allegations pertinent to each individual MI (*i.e.*, what was said, how many times, how often), which cannot

be answered in "one stroke." *Pruitt v. City of Chicago, Dep't of Aviation*, No. 03 C 2877, 2004 WL 1146110, at *9 (N.D. Ill. May 20, 2004), *aff'd sub nom. Pruitt v. City of Chicago, Illinois*, 472 F.3d 925 (7th Cir. 2006) (finding no commonality in racial harassment class action because plaintiffs presented different types of alleged harassing statements and "each alleged harassing statement would need to be individually examined"). The Court will need to analyze whether the alleged actions and environment were subjectively offensive. For example, one of Plaintiffs' witnesses, David Gonzalez, cannot contend that he was offended by the use of the "n" word because he admitted in his deposition that he repeatedly used the "n" word in front of other CVS employees, which was captured on a video that Gonzalez produced to CVS. (Gonzalez Dep. at 164:2-25;172:24-173:15.) *See Sardina v. UPS, Inc.*, 254 F. App'x 108, 110 (2d Cir. 2007) ("[T]o prove a workplace is actionably hostile … plaintiff must demonstrate that [he] 'subjectively perceived[d] the environment to be abusive'"). The Court would have to undergo an individualized analysis to determine whether each MI subjectively perceived the actions and their alleged environment as offensive.

Certain allegations would require the Court to determine whether the statements or actions even have any connection to race whatsoever. Plaintiff Ansoralli alleges, for example, that Salvatore told her "You see that guy? He is going to shoplift. Watch him," in reference to a customer who was black. (Doc. 39 at ¶ 55; Plaintiffs' Memo at 2.) This requires an inquiry into why Salvatore made this statement and whether he personally observed any number of actions wholly unrelated to race, including whether Salvatore witnessed the person actually concealing merchandise, before determining that this comment had any nexus to race. Kerth Pollock's allegation that he was paged over the loudspeaker at certain CVS stores to aisles where, once he observed the customers shopping, saw they were black or Hispanic, will also present even more

individualized questions about the circumstances surrounding those events. (Pollock Dep. I at 78:24-79:6; 87:18-92:4; 101:8-102:3; 110:25-111:4; 172:25-173:7)   For example, the inquiry will involve, *inter alia*, who made each page, what was observed by the individual who made the page and the reason, and whether these pages actually affected the terms and conditions of each MI's employment (Pollock testified that he did not always respond to these pages, and they therefore had no impact on his working conditions). (*Id.* at 85:15-20.)   These allegations present highly individualized issues concerning their context, and there are no common answers to any questions affecting all members of the putative class.

Depending on the nature of the alleged harassment (by a co-worker or supervisor) CVS will respond to each as to whether it had knowledge of the harassment by co-workers or with a *Faragher/Ellerth* defense to supervisory harassment, inquiring into whether the MI unreasonably failed to utilize CVS's complaint procedures. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  Plaintiffs concede in their brief that another of the individualized issues that would be presented for "each Proposed Class Member" is proof of complaints of discrimination. (*See* Plaintiffs' Memo at 25.)   While this also is the antithesis of a class procedure, it is in fact what will have to happen under the constructs for hostile environment claims and Plaintiffs' admittedly individualized evidentiary framework. *See Faragher*, 524 U.S. at 807.  Plaintiffs point to three internal employee complaints to CVS from MIs in support of their motion for class certification. (*See* Plaintiffs' Memo at 20.)   The complaint from Lacole Simpson is a good example of the inquiry that belies class treatment as it had absolutely nothing to do with racial harassment -- Lacole Simpson testified that her statement that there was "no equal opportunity" at CVS was related to the fact that she did not receive a promotion. (Simpson Dep. at 316:23-317:23.)  Similarly, the only time Plaintiff Steele used the CVS hotline was to complain that she

wanted Sundays off for "religious" reasons.  (Gaites Decl. I ¶ 14 & Exhibits 4, 5, & 6.)  By contrast, Plaintiff Ansoralli admitted that she never complained internally while employed at CVS.  (Ansoralli Dep. at 376:24-377:5.)  Whether or not an MI unreasonably failed to complain, or if they complained, the nature of the complaint, the results of the investigation and whether CVS took prompt remedial action all present individualized questions specific to the nature of each complaint that cannot be meaningfully litigated as a class.  *See Elkins v. American Showa, Inc.*, 219 F.R.D. 414, 424 (S.D. Ohio 2002) (rejecting plaintiffs' argument that commonality existed because defendant allegedly "did not investigate and respond to various complaints [of unlawful harassment]" because "the issue of whether defendant failed to deal with harassment in an effective manner must be made on a case-by-case basis and … depends to a large extent on the frequency and severity of the conduct alleged by the complaining individual").

The cases relied upon by Plaintiffs in support of their "common contention" are inapplicable to the case at hand and contain facts that are not present in this case.[6]  The class cases relied upon by Plaintiffs presented situations where all class members were exposed to the same alleged hostile statements and/or work conditions at a single work site.  For example, in *Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201 (N.D. Ill. 2014), the fact that the plaintiffs and the class all worked together in the same building and were exposed to the same alleged racial misconduct is a material distinction from Plaintiffs' disparate and dispersed allegations here.  *See Brand*, 302 F.R.D. at 220 (certifying a hostile work environment class claim because the members of the putative class all heard and were subjected to the exact same language and all worked in the same environment "at a single place of employment.").  Similarly, in *Cokely v. NY*

---

[6] Many of the cases cited by Plaintiffs were issued before the Supreme Court's decision in *Dukes*, which altered the standards for commonality under Rule 23(a).

*Convention Ctr. Operating Corp.*, the court considered the certification of a class limited to employees who all worked in the Javits Center "owing to the racist graffiti and verbal slurs" where all of the allegations occurred in the same work location. *Cokely v. N.Y. Convention Ctr. Operating Corp.*, No. 00 Civ. 4637 (CBM), 2004 WL 1152531, at *1 (S.D.N.Y. May 21, 2004). The same occurred in *Brown v. Nucor Corp.*, No. 04 Civ. 22005 (CWH), 2012 WL 12146620, at *23 (D.S.C. Sept. 11, 2012), as the Court noted that "the case at hand involves … a single work environment" that was "site-specific." *Brown v. Nucor Corp.*, No. 04 Civ. 22005 (CWH), 2012 WL 12146620, at *23 (D.S.C. Sept. 11, 2012). *Brown v. Yellow Transp., Inc.*, No. 08 Civ. 5908, 2011 WL 1838741, at *1 (N.D. Ill. May 11, 2011), also involved a class of employees who all worked in one facility. *Brown v. Yellow Transp., Inc.*, No. 08 Civ. 5908, 2011 WL 1838741, at *1 (N.D. Ill. May 11, 2011). The allegations included items such as "nooses repeatedly being displayed at the Chicago Ridge Facility" and "racially hostile graffiti placed in the bathrooms [of the Facility]" that were placed in locations where **all** employees witnessed. *Id.*

By contrast, here, Plaintiffs worked in different locations, alone. Plaintiffs, by their own admission, candidly concede that they did not work together in the same common environment, and Plaintiffs present no evidence that any MIs did so. (*See* Steele Dep. at 199:25-200:4 ("**I don't know what the other MIs were doing. I have no idea.**"); Ansoralli Dep. at 249:24-251:13 (testifying that she did not know any other MIs and she did not have any conversations about the MI job with anyone else.) Both Plaintiffs testified that no one else ever heard or witnessed the alleged comments or actions that form the basis of their claims. (*See* Factual Background, Section C, *supra*). This is the opposite of the "common work environment" found in cases such as *Comcast* and *Cokely*, where the plaintiffs and putative class members all worked with each other in the same building and heard and saw the same conduct. Moreover, in this

case, evidence shows that multiple MIs never encountered any racial comments, statements or conduct. (*See* Hughes Aff. at ¶¶ 19-27; 30-38; Kinch Aff. at ¶¶ 17-23; 25; 26-35; Quinones Aff. at ¶¶ 21-30; 34; 38-45.)

By way of example, the testimony of Delbert Sorhaindo that he never heard any CVS employee use any racial slur, including the "n" word or "spic" undercuts Plaintiffs' claim that they worked in a "common environment." (Sorhaindo Dep. at 261:18-262:5.) Specifically, even though Simpson testified that she claims to have heard Salvatore use such language, Sorhaindo was supervised by Mr. Salvatore and never heard any racial comments or slurs by him. (*Id.* at 49:3-5; 261:18-262:5.) Sorhaindo and Simpson did not share a common work place and do not have the same answer to the question. Gonzalez and Salazar both worked for RLPM Taylor and never heard or witnessed any racial statements or conduct by Taylor. (Gonzalez Dep. at 76:14-21; 84:14-18; *see also* Exhibit UUU to Plaintiffs' Memo, Doc. No. 180-72.) Frisco Eleston, another of Plaintiffs' witnesses, claims that he heard such statements made by Taylor. (*See* Exhibit TTT ¶¶ 7-9 to Plaintiffs' Memo, Doc. No. 180-71.) They clearly did not share the same common work environment. While Plaintiff Steele claims to have heard comments and statements by Saliu, other MIs testified that they never heard any racial comments or statements by any RLPM, including Saliu. (*See also* Aff. Kinch ¶¶ 17-23; 25; Hughes Aff. ¶¶ 19-27; 30; Quinones ¶¶ 21-30; 34 (never heard Salvatore, Saliu, Butler, or Burgess ever make any racially offensive statements).) This evidence simply belies the notion that even Plaintiffs' witnesses worked in a common work place. Plaintiffs have not established commonality.

### iv.   Plaintiffs Cannot Establish Typicality Under Rule 23(a)

Typicality requires that the claims of the class representatives be typical of those of the class and focuses on the relationship of facts and issues between the class and its representatives. *Spann*, 219 F.R.D. at 316. Plaintiffs Steele and Ansoralli's claims are not typical of the class

they seek to represent.  Plaintiff Sheree Steele only reported to RLPM Abdul Saliu and testified that she did not work with or ever meet any of the other RLPMs in New York City during her employment at CVS.  (Steele Dep. at 138:9-11; 292:9-293:12.)  Plaintiff Steele also only worked in a handful of locations in Brooklyn and Queens and testified that she only seeks to represent MIs who worked in Brooklyn and Queens.  (Steele Dep. 137:25-141:9; 327:18-25.)  Plaintiff Ansoralli reported to RLPM Saliu and worked in CVS stores primarily located in Queens.  (Ansoralli Dep. at 145:20-146:12, 172:14-19.)  Out of the 300 people who held the position of SM in New York City, Plaintiff Steele has only identified two SMs by name who allegedly engaged in any wrongdoing, while Plaintiff Ansoralli has identified five SMs, three of whom she cannot name.  (*See* Factual Background, Section C, *supra*.)  This evidence cannot establish typicality between the named Plaintiffs and the MIs who worked in New York City in approximately 143 different stores with different supervisors.  This is so especially in light of the contradictory evidence presented.

Plaintiffs further fail to establish typicality for the same reasons they fail to establish commonality – their claims are too dependent on the independent circumstances surrounding each of their experiences.  See *Elkins*, 219 F.R.D. at 425 ("[W]hereas one named plaintiff may have been subjected to extensive harassment of an egregious nature in the form of repeated lewd remarks, sexual advances, or unwanted touch, another may have experienced an isolated harassing remark or may have overheard sporadic comments about other females which, standing alone, would not be sufficiently severe or pervasive to support a discrimination charge.  Similarly, whereas one plaintiff may herself have been the target of harassment, another female employee may have simply observed behavior directed toward another which would not necessarily support a sexual harassment charge by the non-targeted employees").  All of the

55598941.7

same variances exist in the present case as there are varying allegations present between MIs over varying time periods and involving separate individuals, all of which demonstrate a lack of typicality. Many of Plaintiffs' witnesses actually contradict their claims. For example, witness Gonzalez testified that he worked for RLPM Taylor and Saliu and never heard either make any racial comments or statements. By contrast, Plaintiff Ansoralli testified that Saliu made racial comments in her presence. Ansoralli's claim is not only "atypical," but also is subject to scrutiny and a claim that likely is fabricated in light of Gonzalez's testimony.

Moreover, the legal standard by which each class member's claim is judged will differ, depending on whether the conduct in question was perpetrated by a supervisor (RLPM) or a non-supervisor (SM). In this regard, some MIs, such as Salazar and Gonzalez, only allege that non-supervisors committed any wrongful acts of racial harassment. (*See* Plaintiffs' Memo at 10-12.) The legal standard for non-supervisory harassment differs from the standard for supervisory harassment *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d. Cir. 2015) ("An employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or his non-supervisory co-workers. If the harassment is perpetrated by the plaintiff's "non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action").

Additionally, CVS establishes an affirmative defense by showing that it "exercised reasonable care to prevent and correct [ ] any ... harassing behavior" and that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise" when the conduct involves a supervisor. *Faragher,* 524 U.S. at 807. To be sure, the evidence concerning these issues varies widely from person to

person based on their specific allegations as to who made comments and whether they made complaints regarding such comments, which does not show that claims are typical and class certification should therefore be denied.

> **v.    Plaintiffs And Their Counsel Cannot Adequately Represent The Interests Of The Putative Class**

When examining the adequacy of representation by named plaintiffs, courts should consider (1) whether the proposed plaintiffs are credible; (2) whether the proposed plaintiffs have adequate knowledge of the case and are actively involved; and (3) whether the interests of the proposed plaintiffs are in conflict with those of the rest of the class.  *See Attenborough v. Const. and Gen. Bldg. Laborers Local 79*, 238 F.R.D. 82, 100-101 (S.D.N.Y. 2006); *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-550 (1949) (class representative is a fiduciary and interests of the class are "dependent upon due diligence wisdom and integrity"); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Moreover, a court may consider whether a class representative is "of sufficient moral character to represent a class." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 CV 8698 (SAS), 2005 WL 106895, at *3 (S.D.N.Y. Jan. 19, 2005).

Plaintiff Steele repeatedly lied in her deposition about her name, documents produced in this action, email accounts, and other actions that she later attempted to recant.  (Steele Dep. at 6:12-21; 76:7-16; 78:22-100:25; 338:19-339:6; 343:14-17 & Exhibits 1, 2, 3, 4, 5.)  During preliminaries, when asked about her name and any other names she may have used, Plaintiff Steele testified under oath that she never used the name Zaire Arruz.  (*Id.* at 76:7-16.)  When confronted with photos and other documents evidencing the use of this name for outside business purposes, Plaintiff Steele continued to lie, stating that a document contained a photo of her, but denied any association to the contents of the documents or source materials.  (*Id.* at 78:22-

100:25.) When asked if she referred to herself as Zaire in a text message she produced in the case, and the text message was about the case, Steele denied this and claimed it was a "typo." (*Id.* at 79:14-81:17 & Exhibit 1.)  Plaintiff Steele even denied that she emailed a document she produced to CVS in this action concerning this lawsuit claiming that she did not send an email under the name "Z Arruz" and created an elaborate story about her email having been hacked. (*Id.* at 94:6-100:10 & Exhibit 5.)  Later in the deposition, Plaintiff Steele admitted to lying under oath.  (*Id.* at 338:19-339:6.)  She similarly admitted to lying about the documents.  (*Id.* at 343:14-17.)

Plaintiff Steele's self-admitted perjury evidences a lack of credibility and makes her unfit to serve as a class representative in this action.  *See e.g., Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 156 (S.D.N.Y. 2010) (finding that plaintiff was inadequate to represent class when he "repeatedly gave false testimony under oath during this lawsuit, and therefore, lacks the honesty and credibility required to be a class representative"); *Kline v. Wolf*, 702 F.2d 400, 402-403 (2d Cir. 1983) (named plaintiff was not adequate representative of class when he testified that he relied upon a report that he later admitted did not exist at the time because "even if this testimony was the product of an innocent mistake, it subjects [the named plaintiff's] credibility to serious question").  Additionally, Plaintiff Steele lied about issues critical to the resolution of this case, including whether she in fact made race-based complaints and whether she actually produced documents concerning this litigation, which makes her unfit to serve as a class representative.

Plaintiff Ansoralli also cannot adequately represent the class because she does not possess the claims of the class she purports to represent.  Plaintiff Ansoralli claims to represent a putative class of MIs with respect to claims of a racially hostile work environment, but has failed

to adequately plead her race.  (Doc. No. 39 at ¶¶ 22-55.)  Plaintiff Ansoralli has only pled her national origin and testified that she is "Guyanese and half Portugese."  (Ansoralli Dep. at 7:10-12.)  Plaintiff Ansoralli explicitly denied in her deposition that she is Hispanic, indicating that she would "never identify [herself] as Hispanic."  (*Id.* at 169:22-25.)  Accordingly, Plaintiff Ansoralli cannot serve as a class representative in this race case because she does not possess the same interest and has not suffered the same injury as the putative class members.  *See, e.g.*, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (adequacy of representation requires that the class representative "possess the same interest and suffer the same injury" as the putative class members); *Armstrong v. Metro Transp. Auth.*, No. 07- Civ. 3561 (DAB), 2015 WL 992737, at *2 (S.D.N.Y. Mar. 3, 2015) ("[i]n order to survive summary judgment on a claim of hostile work environment harassment, … [a] plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class) (quoting *Brennan v. Metro Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).

Further, Plaintiff Steele and Plaintiff Ansoralli are former employees who do not have standing to assert claims for declaratory and injunctive relief against CVS.  *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 121-122 (S.D.N.Y. 2012) (holding that former employees do not have standing to seek class certification of claims for declaratory or injunctive relief following the decision rendered in *Dukes*).

Gauging the adequacy of representation requires not only an assessment as to whether the class representatives have interests antagonistic to those of the class they seek to represent, but also an evaluation of the capabilities and qualifications of the class representative's counsel.  *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968); *Dean v. Couglin*, 107 F.R.D. 331, 334 (S.D.N.Y. 1985).  Plaintiffs' counsel seeks to represent a putative class of current and

former MIs in this action and simultaneously represent 14 former MIs who have filed litigation or arbitration against CVS, which is an express conflict of interest that precludes class certification. *"*Conflicts of interest may exist for class counsel if they are involved in multiple lawsuits for the named representative or against the same defendants." *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) (citing Wright, *supra,* § 1769.1 at 384); *see also Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 678–79 (N.D.Ohio 1995) (noting in these situations, the risk exists for potential class members that counsel will trade off certain of their interests to serve the interests of other clients); *see also Dietrick v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000) (noting that "a situation in which counsel simultaneously represents classes in parallel litigations seeking to tap the same pool of finite assets" would preclude a finding of adequacy under Rule 23(a)(4)).  As the Western District of Texas noted in *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002), unique conflicts of interest arise when the same counsel serves as class counsel and counsel to several individuals who have filed individual actions against the same defendant.

Plaintiffs' counsel's simultaneous representation of the instant Plaintiffs seeking class certification and 14 other MIs with individual actions therefore present direct conflicts of interests that raise questions about Plaintiffs' counsel's ability to "fairly and adequately" represent the interests of the putative class, especially absent class members.  For these reasons, Plaintiffs and their counsel cannot adequately represent the interests of the putative class and class certification should be denied accordingly.

### B.    Plaintiffs Cannot Meet The Requirements Of Rule 23(b)(2) After *Dukes*

Rule 23(b)(2) permits certification of a class when the class is seeking injunctive or declaratory relief. Fed. R. Civ. P. 23(b)(2). Plaintiffs must demonstrate that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is

appropriate respecting the class as a whole."  *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI (RML), 2013 WL 7044866, at *16 (E.D.N.Y. July 18, 2013).

In *Dukes*, the Supreme Court held that employment discrimination suits are not eligible for Rule 23(b)(2) certification if the class seeks substantial and individualized monetary claims for relief including backpay.  *Dukes*, 564 U.S. at 360-363.  Specifically, the Supreme Court held that "certification under Rule 23(b)(2) is not appropriate 'when-despite the suitability of generalized injunctive or declaratory relief-each class member would [also] be entitled to an individualized award of monetary damages.'"  *Ackerman*, 2013 WL 7044866, at *16 (*citing Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012).

Plaintiffs have requested the precise individualized monetary relief that the Supreme Court explicitly rejected in *Dukes* under Rule 23(b)(2) because of the highly individualized determinations required for each purported class member.  *Dukes*, 564 U.S. at 360-363.  The purported class claims for relief include "economic damages, mental anguish, emotional distress, and punitive damages."  (Doc. 39 at ¶¶ 113-114; 117; 120-121.)  Each MI who claims to have been subjected to a hostile work environment would also claim to have suffered different damages with respect to mental anguish, emotional distress, and punitive damages, which the Supreme Court has held cannot be certified under Rule 23(b)(2).

Plaintiffs contend still that the class meets the requirements of Rule 23(b)(2) because the monetary claims for relief outlined above are somehow "merely incidental to declaratory or injunctive relief."  Plaintiffs are merely paying lip service to the requirements of Rule 23(b)(2), but do not and cannot provide any explanation as to how the emotional damages they seek – the precise types of damages explicitly rejected in *Dukes* as inapposite to Rule 23(b)(2) – are somehow  incidental to the declaratory or injunctive relief in this case.  When asked what she is

seeking from this case, Plaintiff Steele provided a one word answer: "Damages." (Steele Dep. 332:20-22). Plaintiffs' witnesses Simpson and Sorhaindo have demanded over $12 million **each** in their arbitrations. (*See* Simpson Damages Specification; *see also* Sorhaindo Damages Specification.) These can hardly meet the definition of "incidental."

Plaintiffs' monetary claims are not "merely incidental" to their claims for declaratory or injunctive relief, they are their only viable claims for relief. As former employees, Plaintiffs do not have standing to assert claims for declaratory or injunctive relief. *See Chen-Oster*, 877 F. Supp. 2d at 121-122 (holding that former employees do not have standing to seek class certification of claims for declaratory or injunctive relief following the decision rendered in *Dukes*). Plaintiffs' only claims therefore are for monetary damages, which must be considered, if at all, under Rule 23(b)(3). For these reasons, Plaintiffs' Rule 23(b)(2) argument is wholly precluded by the Supreme Court's decision in *Dukes* and should be denied accordingly.

### C.     Plaintiffs Fail To Meet The Requirements Of Rule 23(b)(3)

To certify a class action under Rule 23(b)(3), the Court must find that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S.591, 623-624 (1997). The predominance portion of this rule parallels Rule 23(a)(2), but imposes "a far more demanding" inquiry into the common issues which serve as the basis for class certification. *Id.* at 624.

#### i.     Plaintiffs Cannot Show That Common Questions Predominate Over Individualized Questions

Plaintiffs cannot establish the requirements under Rule 23(b)(3) because individual issues dominate. While Plaintiffs' concede (as they must) that damages under (b)(3) are individualized

inquiries, they are not the only individualized inquiries before the Court.  As discussed above, Plaintiffs only identify one "common contention."  Plaintiffs' hostile work environment claims present highly individualized questions that vary from person to person.   The anecdotal allegations require individualized analysis with respect to their nexus to race, frequency, severity, and objective and subjective offensiveness, to name a few of the individualized inquiries required.  The issue of whether statements or comments were made to an MI by their supervisors or non-supervisors also requires individual analysis.  Additionally, the application of the *Faragher/Ellerth* defense to each MI requires an individualized inquiry as to whether the MI reasonably took advantage of any preventive or corrective opportunities provided by CVS to avoid harm.  *Faragher,* 524 U.S. at 807.  Indeed, each complaint made under CVS's anti-harassment policies requires an analysis of a number of different factors including, whether the complaint was a valid complaint of race discrimination and/or racial harassment, who the complaint was made to, and when the complaint was made, which collectively would overwhelm any other issues presented in this case.  *See N.J. Carpenters Health Fund v. Rali Selies, 2006-Q01 Tr.*, 477 F. App'x 809, 813 (2d Cir. 2012) ("The district court held that to determine whether each purchaser had actual knowledge of the specific untruths or omissions at the time of its purchase would require many individualized inquiries, outweighing the common issues in the case [an affirmative defense]. . . .  [W]e cannot on this record hold the district court to have abused its discretion in concluding that individual issues would predominate. . . .  [The district court] permissibly determined that knowledge defenses would require extensive individual proceedings.").

Indeed, many Courts analyzing this issue in hostile work environment cases have found that predominance cannot be satisfied because of the individualized questions presented.  *See*

*Reid v. Lockhead Martin Aeronautics Co.*, 205 F.R.D. 655, 684-685 (N.D. Ga. 2001) (holding that plaintiffs cannot achieve class certification under Rule 23(b)(3) because the individual issues relating to their employment discrimination claims predominate noting that "the true problem with certifying Plaintiffs' discrimination claims under Rule 23(b)(3) concerns not merely a question of relief but a question of liability itself. Claims of discrimination, in employment or elsewhere, depend heavily on the specific circumstances and conditions in which the victim finds himself or herself"); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 166 (D. Kan. 1996) ("[P]laintiffs claims of hostile work environment discrimination are subjective and individualized in nature, and do not lend themselves to class treatment. Each class member's exposure to allegedly discriminatory conduct varies in nature and degree from that of other named plaintiffs and putative class members. We believe that, if certified, the class action would devolve into a series of individual trials on issues peculiar to each plaintiff, and consequently, common issues do not predominate.").

The Northern District of Illinois' analysis in *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 438 (N.D. Ill. 2003), is particularly instructive in this case because the Court listed the specific issues that predominate in denying class certification in a hostile work environment case. The Northern District of Illinois explained that: "[I]ndividual issues of: (1) whether the work environment was subjectively hostile; (2) whether a supervisor or coworker exposed the class member to the hostile environment; (3) whether each particular class member suffered an adverse employment action; and (4) the particular class member's steps in taking advantage of possible preventative or corrective opportunities offered by [defendant] predominate over class issues with regard to the hostile work environment claims." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 438 (N.D. Ill. 2003). As the Court

in *Elkins* explained, individualized issues will predominate in a hostile work environment case with facts similar to this action. *Elkins*, 219 F.R.D. at 426-427. Plaintiffs cannot show that common questions predominate over individualized issues, and the Court should deny class certification accordingly.

> ii.     **Plaintiffs Cannot Satisfy The Superiority Requirement**

To analyze superiority, the Court must consider four nonexclusive factors: (1) the interest of the class members in maintaining separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Plaintiffs cannot meet any of the factors because all of the MIs identified in Plaintiffs' Motion have already filed their own actions in various forums, including state court, federal court, and have either been compelled to or otherwise consented to binding arbitration. There is therefore significant interest among MIs to file their own actions and in fact, the 14 MIs who have filed their own actions selected the forum of their choosing, determined which claims to bring – i.e. whether to bring state claims, federal claims, or both – and named various individual defendants other than CVS. None of these individuals chose to litigate their claims in this forum.

Additionally, there are many difficulties likely to be encountered in the management of this case as a class action as evidenced by the widely divergent allegations claimed and highly individualized inquiries required to adjudicate these claims. *See e.g., Oakley v. Verizon Communications, Inc.*, No. 09 Civ. 9175 (CM), 2012 WL 335657, at *18 (S.D.N.Y. Feb. 1, 2012) (holding that the plaintiffs failed to satisfy the superiority requirement of Rule 23(b)(3) because "the class devise would be of extremely limited usefulness in adjudicating these claims"

stating that "these are not cases where it makes no economic sense for an individual to pursue his own claim.  This Court sees no shortage of individuals who are aggrieved … they bring their claims with the assistance of able counsel"); *see also In re Bayou Hedge Fund Investment Litigation*, 248 F.R.D. 404, 405 (S.D.N.Y. 2008) (refusing to certify a class stating that "[w]hile judicial economy will generally result from the avoidance of multiple actions, in this case we already have multiple action – eight of them, to be exact.  As those arbitrations have been proceeding for well over a year – some may have gone to hearing since this motion was filed – certifying a class is unlikely to produce judicial economy by reducing the number of pending matters.").  For these reasons, Plaintiffs cannot meet the requirements of Rule 23(b)(3) and class certification should be denied.

## CONCLUSION

For the forgoing reasons, CVS respectfully requests that the Court deny Plaintiffs' Motion for Class Certification.  Plaintiffs have not satisfied their burden of establishing any of the requirements of Rule 23(a) and/or 23(b).

Respectfully submitted this 13th day of January, 2017.

**POLSINELLI PC**

*s/ Nancy E. Rafuse*

Nancy E. Rafuse, Esq. (admitted pro hac vice)
J. Stanton Hill, Esq. (admitted pro hac vice)
William B. Hill, Jr., Esq. (admitted pro hac vice)
Stephanie D. Delatorre, Esq. (admitted pro hac vice)
1201 West Peachtree Street, 11th Floor
Atlanta, GA 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060
nrafuse@polsinelli.com
jshill@polsinelli.com
wbhill@polsinelli.com
sdelatorre@polsinelli.com

55598941.7

Adam Grant, Esq.
600 Third Avenue, 42nd Floor
New York, NY 10016
Telephone:  (212) 684-0199
Facsimile:  (212) 684-0197
akgrant@polsinelli.com

Counsel for Defendant CVS Pharmacy, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 13, 2017, I caused to be served a true copy of

DEFENDANT CVS PHARMACY INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS'

MOTION FOR CLASS CERTIFICATION by electronic means (ECF) on:

> Douglas H. Wigdor
> David E. Gottleib
> Michael J. Willemin
> Kenneth Sommer
> **WIGDOR LLP**
> 85 Fifth Avenue
> New York, NY 10003
> Telephone: (212) 257-6800
> Facsimile: (212) 257-6845
> dwigdor@wigdorlaw.com
> dgottleib@wigdorlaw.com
> mwillemin@wigdorlaw.com
> ksommer@wigdorlaw.com
>
> Counsel for Plaintiffs


> *s/ Nancy E. Rafuse*
> Counsel for Defendant CVS Pharmacy, Inc.